IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRIS PETRI, YI LU LU, KEITH PETRI, LISA PETRI, and KEITH KOTCHE, | ) ) ) | |
| Plaintiffs, | ) ) | No. 17-cv-02579 |
| v. | ) ) | Judge Andrea R. Wood |
| GEACOM, INC., MAT JOHNSON, and RALPH ROMANO, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiffs are minority shareholders of Defendant GeaCom, Inc. who have sued GeaCom, as well as its President and Chief Executive Officer, Mat Johnson, and its Chief Financial Officer and Director, Ralph Romano (collectively, Defendants), claiming that they invested more than $3.5 million in the company based on false representations by Defendants. Specifically, Plaintiffs allege that Johnson made a number of representations regarding the company's success, sales, and customer contracts that induced Plaintiffs to continue investing in the company but turned out to be false. Plaintiffs also allege that Defendants failed to disclose the company's financial statements, did not include Plaintiffs in shareholder meetings, and issued stock without notifying Plaintiffs in violation of the parties' Subscription Agreement. Plaintiffs allege six causes of action in their Complaint against Defendants, including a federal securities fraud claim and five state law claims based on theories of breach of contract, breach of fiduciary duty, fraud, and corporate embezzlement and waste. Now before the Court is Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 7.) For the reasons discussed below, Defendants' motion is granted in part and denied in part.

BACKGROUND

For the purposes of Defendants' motion to dismiss, this Court accepts as true the well-pleaded facts in the Complaint and views them in the light most favorable to Plaintiffs. *See, e.g., Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

Defendant Johnson approached Chris Petri about an investment opportunity in GeaCom, providing information about pending sales and expected incoming orders. (Compl. ¶¶ 10–11, Dkt. 1.1.) In considering whether to invest, Plaintiffs found numerous articles that included public statements made by Johnson in 2010 about expectations for future production and sales. (*Id.* ¶ 12.) Based on those representations by Johnson, in early 2011, Plaintiffs entered into a Subscription Agreement with GeaCom and made their first equity investment of $540,000 in exchange for 72,000 shares. (*Id.* ¶¶ 14–15.) From 2011 to 2016, Plaintiffs relied on Johnson's sales projections, statements about pending contracts, and public statements about the future of GeaCom, and as a result continued to invest additional funds into GeaCom. (*Id.* ¶ 15.) All told, Plaintiffs invested more than $3,582,500 in GeaCom. (*Id.* ¶ 18.)

In addition, throughout their relationship with GeaCom, Plaintiffs requested disclosure of information relating to the company's financials and sales contracts, but received limited or no response from Defendants. (*Id.* ¶¶ 19, 21.) Finally, between October 2015 and August 2016, GeaCom issued stock for more than $800,000 without notifying Plaintiffs about the stock issuance. (*Id.* p. 5 ¶ 4.)

Plaintiffs originally filed this case in state court and Defendants removed it here based on this Court's federal question jurisdiction and the diversity of the citizenship of the parties.[1] In

---

[1] This Court has federal question jurisdiction due to the claim asserted under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, and on that basis may exercise supplemental jurisdiction over the state law claims. In addition, as alleged in the complaint, Plaintiffs are citizens of Illinois, Defendant Geocom is a citizen of Minnesota, and the amount in controversy exceeds $75,000. (Compl. ¶¶ 1–6 (alleging

2

their Complaint, Plaintiffs assert six causes of action based on the alleged misrepresentations and failures: breach of the Subscription Agreement (Count I); breach of fiduciary duties in prejudicial treatment to plaintiff shareholders (Count II); breach of fiduciary duties in fraudulent inducement (Count III); fraudulent inducement (Count IV); embezzlement and waste of corporate assets (Count V); and fraud under the Securities Exchange Act of 1934 (Count VI). Defendants have moved to dismiss the Complaint in its entirety.

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In addition, "a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Silha v. ACT, Inc.,* 807 F.3d 169, 173 (7th Cir. 2015). That is, the "well-pleaded allegations must 'plausibly give rise to an entitlement of relief.'" *Id*. at 174 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). To determine plausibility, "the court will ask itself ***could*** these things have happened, not ***did*** they happen." *Swanson v. Citibank, N.A*., 614 F.3d 400, 404 (7th Cir. 2010) (emphasis in original). "[T]he plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679). While the Court accepts a complaint's factual allegations as true, it is not required to accept a plaintiff's legal conclusions. *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

---

citizenship of Plaintiffs and Geocom).) In their notice of removal, Defendants aver that Johnson and Romano also are citizens of Minnesota.

### I. Count I: Breach of Subscription Agreement

In Count I of the Complaint, Plaintiffs allege that Defendants violated the Subscription Agreement's right of first refusal clause when GeaCom issued more than $800,000 worth of stock without notifying Plaintiffs. The right of first refusal clause provides that if the subscribers hold at least 50,000 shares of common stock in the aggregate, "if the Company proposes to offer or sell any new Securities, the Company shall give notice ('Offer Notice') to each Subscriber . . . . By notification to the Company . . . any Subscriber may elect to purchase or otherwise acquire, at the price and on the terms specified in the Offer Notice, up to that portion of such New Securities . . . ." (Ex. C-1 to Compl. ¶ 11, Dkt. No. 1-1.)

Defendants advance three arguments why Count I should be dismissed as to particular parties. First, Defendants argue that Plaintiff Chris Petri's claim must be dismissed because, although he was a party to the Subscription Agreement, he subsequently entered into the Key Investor Agreement, which provided that upon signing, "all prior agreements of the parties" were "null and void." (Ex. C-2 to Compl. ¶ 5, Dkt. No. 1-1.) However, the two agreements make clear that Chris Petri signed the Subscription Agreement in his capacity as trustee, while he signed the Key Investor Agreement in his individual capacity. An individual may enter into contracts in various capacities without binding the individual in another capacity. *See, e.g.*, *Rand v. Sage*, 102 N.W. 864, 865 (Minn. 1905) (holding that the contractual relationship was between plaintiff and defendant as trustee, and not defendant in his individual capacity); Restatement (Second) of Contracts § 9 (2017 Update) ("One person may have different capacities, for instance as trustee . . . and as individual" and may make contracts in various capacities). The Court therefore denies Defendants' motion to dismiss Chris Petri's claim in Count I.

Defendants also argue that Plaintiffs Yi Lu Lu's and Keith Kotche's claims under Count I should be dismissed because they are not parties to the Subscription Agreement. Plaintiffs do not appear to dispute this argument in their response. The Subscription Agreement provides that it is between GeaCom and "each of the entities set forth on the signature page to this Agreement . . . ." (Ex. C-1 to Compl., Dkt. No. 1-1, at p. 1.) The signors on the signature page are C.A. Petri as trustee of the C.A. Petri Trust, Keith Petri as trustee of the Keith Petri Trust, and Lisa Kay Petri as trustee of the Lisa Kay Petri trust. (*Id*. at p. 8.). Because Lu and Kotche were not parties to the Subscription Agreement, the Court will grant Defendants' motion to dismiss Count I as to Lu and Kotche, without prejudice to those plaintiffs seeking to amend the Complaint to allege facts establishing that they are in fact parties to the Subscription Agreement notwithstanding the fact that they were not signors to the agreement.

Defendants next argue that Count I must be dismissed as to Defendants Johnson and Romano because the Subscription Agreement was only entered into by GeaCom, and not Johnson or Romano. In response, Plaintiffs argue that the Court should pierce the corporate veil and find that Johnson and Romano may be held liable for the alleged breach by Geocom. "Under Minnesota law,[2] a court may, under limited circumstances, pierce the corporate veil and hold a corporation's owner or officer liable for the acts of the corporation," including breach of contract. *Integrity Dominion Funds, LLC v. Lazy Deuce Capital Co., LLC*, No. CIV 12-254 RHK.JSM, 2013 WL 3716611, at *7 (D. Minn. July 12, 2013). At the motion to dismiss stage, a court must decide if the plaintiff has alleged facts establishing that veil piercing is appropriate. *Id*. The

---

[2] Defendants argue that the Court, sitting in diversity, should apply Minnesota substantive law to Plaintiffs' state law claims because the Subscription Agreement contains a Minnesota choice-of-law provision and because Plaintiffs refer to various Minnesota statutes throughout their Complaint. Plaintiffs do not dispute that Minnesota law governs, and the Court will therefore apply it. *See, e.g.*, *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.") (internal quotation marks omitted).

Minnesota Supreme Court has set out a two-prong test for determining whether to pierce the corporate veil. *Id*. (citing *Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979)). The first prong consists of eight factors regarding the financial state and functioning of the corporation; specifically, "insufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely facade for individual dealings." *Victoria Elevator*, 283 N.W.2d at 512. Under the second prong, a court must analyze whether the party seeking to pierce the veil has established that doing so is necessary to avoid "an element of injustice or fundamental unfairness." *Id*. Here, Plaintiffs have not pleaded any facts establishing the required factors. The Court therefore dismisses Count I as to Defendants Johnson and Romano, but without prejudice and with leave to replead if Plaintiffs believe they can allege facts establishing that the corporate veil should be pierced.

In sum, the claims asserted by Plaintiffs Lu and Kotche in Count I are dismissed, as are the claims by the remaining Plaintiffs against Defendants Johnson and Romano. Defendants' motion to dismiss Count I is otherwise denied.

    **II.**    **Counts II and III: Breach of Fiduciary Duties**

Plaintiffs purport to allege the breach of two separate fiduciary duties: "breach of fiduciary duties in prejudicial treatment to plaintiff shareholders" (Count II) and "breach of fiduciary duties in fraudulent inducement" (Count III). With respect Count II, Plaintiffs allege that Defendants breached their fiduciary duties because Defendants never sent shareholder meeting invitations to Plaintiffs, never prepared or sent financial reports when requested by Plaintiffs, and denied other

6

requests for material information relating to the financial condition of the company and lost sales. With respect to Count III, Plaintiffs allege that Defendants made sales presentations and other representations to Plaintiffs that did not disclose material risks.

In Minnesota, the duties owed by officers and directors to a corporation and its shareholders are statutorily proscribed. Minnesota statutes provide that officers and directors of a corporation "shall discharge the duties of the position [] in good faith, in a manner the director reasonably believes to be in the best interests of the corporation, and with the care an ordinarily prudent person in a like position would exercise under similar circumstances." M.S.A. §§ 302A.251, 302A.361. Minnesota courts have interpreted the standard of conduct prescribed in these statutes to require three fiduciary duties: a duty of good faith, a duty of loyalty, and a duty of good care. *See, e.g.*, *Miller v. Miller*, 222 N.W.2d 71, 78 (Minn. 1974); *McMenomy v. Ryden*, 148 N.W.2d 804, 809 (Minn. 1967). The duty of loyalty includes a duty to disclose material facts. *Klein v. First Edina Nat'l Bank*, 196 N.W.2d 619, 622 (Minn. 1972). To plead a breach of fiduciary duty, Plaintiffs must allege: (1) the existence of a fiduciary duty; (2) a breach of that duty; (3) causation; and (4) damages. *See, e.g.*, *Reisdorf v. i3, LLC*, 129 F. Supp. 3d 751, 767 (D. Minn. 2015) (applying Minnesota law).

Read in the light most favorable to Plaintiffs, the Complaint alleges that Defendants Johnson and Romano, as directors and officers of GeaCom, owed fiduciary duties to Plaintiffs as shareholders and breached those duties by failing to disclose requested material information about GeaCom's performance, including financial reports and information about material risks associated with the business. Plaintiffs further allege that they suffered damage from Johnson's and Romano's breaches in the form of Plaintiffs' continued investments in GeaCom and lost investment opportunities elsewhere because they were not able to timely adjust their investment

positions given the lack of information. These allegations are sufficient to survive Defendants' motion to dismiss Counts II and III.

Defendants nonetheless argue that Plaintiffs' claims fail because Plaintiffs attached to their Complaint detailed annual financial statements provided to them by GeaCom, along with emails from GeaCom suggesting that they were invited to all annual shareholder meetings. Defendants reference Exhibits B-1 and B-2 to the Complaint, which appear to be GeaCom income statements for 2015 and 2016; a preliminary expenses sheet for 2014; and balance sheets laying out assets, liabilities, and equity as of May 31, 2013, April 20, 2014, September 1, 2015, October 9, 2015, December 31, 2015, and May 20, 2016. (Compl. at Ex. B-1, Ex. B-2, Dkt. No. 1-1.) But nowhere does the Complaint allege that Plaintiffs received these or other financial statements in response to their requests or otherwise received them in a timely fashion. Rather, the Complaint, read in the light most favorable to Plaintiffs, plausibly alleges that Defendants repeatedly denied Plaintiffs' requests for financial information and failed to disclose material information. Indeed, the Complaint attaches as exhibits numerous emails where Defendants denied Plaintiffs' requests for information. (*Id*. at Ex. D-2, D-4, D-5.) Then, in 2016, Plaintiffs received financial statements for 2015 and 2016 (*i.e.*, the statements in Exhibit B-1) that "shocked" Plaintiffs in what they showed about GeaCom's financials. (*Id*. ¶¶ 19–20.) The Complaint does not allege when the balance sheets in Exhibit B-2 were provided to Plaintiffs and, given the allegations specifying Defendants' numerous denials to requests for information, the Court declines to assume that those statements were provided when Plaintiffs requested them or in an otherwise timely fashion. With respect to the annual shareholder meetings, Defendants argue that Plaintiffs' Exhibit D contradicts Plaintiffs' claim because it shows that Plaintiffs were invited to all annual shareholder meetings. But the exhibit is simply an email from Johnson to Chris Petri assuring him that GeaCom has held

annual shareholder meetings and that Chris Petri has been invited. (*Id*. at Ex. D-2.) Such a self-serving statement is not sufficient to contradict Plaintiffs' allegation at the pleading stage that GeaCom did not hold annual shareholder meetings or did not invite Plaintiffs.

Finally, Defendants argue that the claims should be dismissed because Plaintiffs do not specify as to which of the named Defendants the breach of fiduciary duty claims are directed. But Plaintiffs' allegations make clear that Plaintiffs intend to assert their claims against the two Defendants against whom a breach of fiduciary claim is possible—Johnson and Romano, the officers and directors of GeaCom. Moreover, Plaintiffs' response brief clarifies that the claims are brought against the named defendants who are officers or directors of GeaCom—that is, Romano and Johnson. (Pls.' Resp. at 7, Dkt. No. 10.) Defendants' motion to dismiss Counts II and III is therefore denied.

### III. Count IV: Fraudulent Inducement

To state a claim for fraud in the inducement, a plaintiff must allege: "(1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made . . . without know[ledge] whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffered pecuniary damage as a result of the reliance." *Hoyt Props., Inc. v. Prod. Res. Grp., LLC*, 736 N.W.2d 313, 318 (Minn. 2007) (citation and quotation marks omitted). The first requirement provides that the false representation must be of a "***past or existing*** material fact susceptible of knowledge." *Id*. (emphasis added). That is, "[i]t is a well-settled rule that a representation or expectation as to future acts is not a sufficient basis to support an action for fraud merely because the represented act or event did not take place." *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764

N.W.2d 359, 369 (Minn. 2009); *Lahti v. Countrywide Bank, FSB*, No. CIV 12-629 ADM/FLN, 2012 WL 4815075, at *2 (D. Minn. Oct. 10, 2012) (dismissing complaint under Minnesota law because "[t]he fraudulent representations allegedly made by [defendants] are both statements concerning future events . . . ."). A claim for fraud in the inducement "is only different from a common-law fraud claim in that it requires a claim that the fraud contributed to the formation of a contract." *Target Corp. v. LCH Pavement Consultants, LLC*, Civ. No. 12-1912, 2013 WL 4400390, at *6 (D. Minn. Aug. 9, 2013). Put another way, "a fraud in the inducement claim succeeds only when the defendant has not met the obligations of the contract." *Lahti*, 2012 WL 4815075, at *2; *see also ADT Sec. Svcs., Inc. v. Swenson,* Civ. No. 7–2983, 2011 WL 4396918, at *6 (D. Minn. Sept. 21, 2011) ("[A] party's compliance with contractual obligations is a relevant factor in evaluating claims for fraudulent inducement.") (citations omitted). Fraud must be alleged with particularity pursuant to Federal Rule of Civil Procedure 9(b). *Id*. at *3. That is, in alleging fraud, "a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud . . . ." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011).

A number of allegedly false statements that Plaintiffs claim were made by Defendants are very clearly statements about future events rather than "past or existing material fact susceptible of knowledge," and thus those statements cannot support Plaintiffs' fraud claim. For example, public statements made by Defendants regarding "expect[ations]" for production, "hopes to sell" particular quantities, projected increases in production, and goals for the following years are all future statements that are not actionable as fraud. Indeed, the Complaint even identifies these statements as "statements regarding **the future of GeaCom**." (Compl. at p. 13 (emphasis added).) The Complaint does identify some additional statements allegedly made by Defendants and not

clearly statements about the future, for example statements about "thousands of orders" from buyers and particular deals made. (Compl. at p. 14 ¶¶ 6B, C, D, F, K.) However, Plaintiffs' fraud claim may not proceed based on those alleged statements for the separate reason that Plaintiffs fail to allege that Defendants made the statements with knowledge of their falsity or without regard to whether they were true or false. *Hoyt Props.*, 736 N.W.2d at 318. Moreover, if Plaintiffs indeed intend to allege a fraudulent inducement claim, as the Complaint suggests, the claim fails for the additional reason that Plaintiffs have not alleged that Defendants failed to meet the obligations of any contract. *See, e.g.*, *ADT Sec. Svcs*, 2011 WL 4396918, at *6 ("[A] party's compliance with contractual obligations is a relevant factor in evaluating claims for fraudulent inducement.") (citations omitted). The Court therefore dismisses Count IV without prejudice.

### IV. Count V: Embezzlement and Waste of Corporate Assets

Plaintiffs also purport to bring a claim for embezzlement and waste of corporate assets, alleging that the funds they invested were misappropriated and mismanaged. Plaintiffs provide examples of GeaCom purporting to spend $40,000 annually on attorneys and accountants, $20,000 on internet and telephone, and another $20,000 on office supplies. Plaintiffs also point to an increase in annual expenses from $1.8 million to $1.95 million from 2013 to 2016, despite the fact that average annual sales for the period were less than $30,000.

Plaintiffs' claim for embezzlement and waste of corporate assets must be dismissed because Plaintiffs fail to set forth any semblance of a claim on either basis. Not only do Plaintiffs fail to identify the elements of a claim for embezzlement or waste of corporate assets, or to identify a statute under which they may assert such claims, but they also fail to allege any factual basis to demonstrate that such claims are plausible. *See Willis v. U.S. Bank Nat. Ass'n ND*, No. 07-cv-3130 DWF/SRN, 2007 WL 3313669, at *5 (D. Minn. Nov. 6, 2007) (dismissing complaint

where the plaintiff's complaint failed to set forth the elements of an embezzlement claim or to identify the statute under which he asserts this claim, and the factual basis alleged by the plaintiff failed to demonstrate that a claim for relief was plausible). The allegation that Defendants spent a certain amount of money on annual fees for attorneys, accountants, internet and telephone, and office supplies does not plausibly allege that funds were embezzled or wasted—each of those categories of expenses, on their faces, are reasonable for a corporation to incur and there are no facts alleged to support a plausible claim that the amounts expended nonetheless were unreasonable here. Similarly, allegations that "financial statements revealed highly suspicious unidentified expense items and unclassified current asset items to boost shareholder's equity;" "[a]sset items were buffed by the loss from previous years to boost the Plaintiffs' book value of equity investment;" and general allegations of a Ponzi scheme, without more, do not allege any facts to push Plaintiffs' claim to the realm of probability.

Moreover, Plaintiffs' claim must be dismissed for the independent reason that claims that officers or directors misappropriated or mismanaged a corporation's funds are derivative claims that belong to the corporation; a shareholder may bring such claims only derivatively. *See Wessin v. Archives Corp.*, 592 N.W. 2d 460, 464 (Minn. 1999) (affirming dismissal of a claim brought by a shareholder that the majority shareholder misappropriated corporate assets because "[t]hese claims are traditional derivative claims that rightfully belong to the corporation" and "[a]ny damage claimed by [plaintiffs] arises only from their status as existing shareholders"). Plaintiffs do not purport to bring this claim derivatively and do not follow the procedures for derivative actions provided in Federal Rule of Civil Procedure 23.1. *See id.*; *Staehr v. W. Capital Res., Inv.*, No. 10-cv-1806 JNE/FLN, 2011 WL 2633894, at *4 (D. Minn. July 6, 2011) (dismissing an action under Minnesota substantive law because the plaintiffs did not bring the action as a

derivative action in compliance with Fed. R. Civ. P. 23.1). The Court therefore dismisses Count V with leave to replead in the event that Plaintiffs can identify and plead an appropriate cause of action.

V.      **Count VI: Securities Exchange Act Fraud**

To state a claim under § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 77j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, a plaintiff must allege that the defendant "(1) made a misstatement or omission, (2) of material fact, (3) with scienter, (4) in connection with the purchase or sale of securities, (5) upon which the plaintiff relied, and (6) that reliance proximately caused plaintiff's injuries." *In re HealthCare Compare Corp. Securities Litig.*, 75 F.3d 276, 280 (7th Cir. 1996). Additionally, the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b), passed by Congress in 1995 to amend the Exchange Act, provides that private securities fraud suits are subject to heightened pleading standards that "exceed even the particularity requirements of Rule 9(b)." *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 594 (7th Cir. 2006), vacated on other grounds, 551 U.S. 308 (2007). Specifically, a securities fraud complaint by investors must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1), (2). Given these requirements, "it is not sufficient to merely claim that a statement was false or misleading. Instead, Plaintiffs must state with particularity the facts—known to the speaker at the time—that render the statement false or misleading." *Constr. Workers Pension Fund-Lake County and Vicinity v. Navistar Int'l*, 114 F. Supp.3d 633, 651 (N.D. Ill. 2015). The statute expressly requires the Court to dismiss the

complaint if these requirements are not met. 15 U.S.C. § 78u-4(b)(3)(A) ("[T]he court shall, on the motion of any defendant, dismiss the complaint if [these] requirements . . . are not met.").

With respect to the materiality requirement, on a motion to dismiss, courts hold immaterial as a matter of law statements that are mere "puffery"—*i.e.*, that constitute nothing more than "loosely optimistic statements that are so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor could find them important to the total mix of information available." *In re Midway Games Inc. Sec. Litig.*, 332 F. Supp. 2d 1152, 1164 (N.D. Ill. 2004) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1217 (1st Cir. 1996)). For example, statements that a company has a "strong balance sheet," "proven record of growth," is "the fastest growing . . . company," or is "well-positioned to continue creating value" have been held immaterial as a matter of law. *Silverman v. Motorola, Inc.*, No. 07 C 4507, 2008 WL 4360648, at *9 (N.D. Ill. Sept. 23, 2008).

In addition, forward-looking statements are protected by the PSLRA's safe harbor provision if "(1) the statement is identified as forward-looking and accompanied by meaningful cautionary language . . . or (2) if the plaintiff fails to demonstrate that the statement was made with actual knowledge that it was false or misleading." *Constr. Workers*, 114 F. Supp. 3d at 646 (internal quotations omitted). "To avoid dismissal under the second prong of the safe harbor provision, plaintiffs must plead with particularly facts giving rise to a strong inference that the defendant had actual knowledge of the falsity of the statements. Mere recklessness is not enough." *Id*. (internal quotation marks and citations omitted). "Forward looking statements include statements (1) 'containing a projection of revenues,' or other financial items; (2) 'of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;' (3) 'of future economic performance;' or (4) 'of the

assumptions underlying or relating' to the aforementioned statements." *Silverman*, 2008 WL 4360648, at *9 (quoting 15 U.S.C. § 78u-5(a)(A)–D).

The PSLRA defines the necessary scienter as "the intent to deceive, manipulate or defraud" or "reckless disregard for the truth." *S.E.C. v. Jakubowski*, 150 F.3d 675, 681 (7th Cir. 1998). To survive a motion to dismiss, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §§ 78u-4(b)(1), (2). To determine whether a complaint gives rise to a "strong' inference of scienter, the court must take into account plausible opposing inferences." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). That is, "a court must consider plausible, nonculpable explanations of the defendant's conduct, as well as inferences favoring the plaintiff . . . . A complaint will survive [] only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*.

Finally, the element of causation has two necessary components, "transaction causation" and "loss causation." *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997). "To plead transaction causation, the plaintiff must allege that it would not have invested in the instrument if the defendant had stated truthfully the material facts at the time of sale." *Id*. "To plead loss causation, the plaintiff must allege that it was the very facts about which the defendant lied which caused its injuries." A complaint does not need to plead causation with specificity. *E.g.*, *Ong ex rel. Ong v. Sears Roebuck & Co.*, 459 F. Supp. 2d 729, 742 (N.D. Ill. 2006) (collecting cases).

Plaintiffs here do sufficiently identify the specific statements alleged to be misleading as required by the Exchange Act, but for the vast majority of the statements identified, Plaintiffs fail to "specify . . . the reason or reasons why the statement is misleading." Alleging generally that the

statements were "false" is not enough under Rule 9(b) pleading standards, let alone heightened PSLRA pleading standards. The one allegation that nears the requisite specificity is the allegation that "none of the so-called pending sales were ever realized." (Compl. p. 24 ¶ 5; p. 4 ¶ 20.) However, the public statements that Plaintiffs allege as false do not have to do with pending sales such that the allegation that "none of the so-called pending sales were ever realized" would sufficiently explain why the statements were false. For example, public statements that GeaCom "attracted major strategic relationships," "expects to produce" or "hopes to sell" a certain number of units, anticipated an increase in monthly production, "started taking orders for shipment," and future projections of number of units to be sold the following year are not statements regarding pending sales. The statement in a newspaper article about GeaCom that "Johnson adds that GeaCom has landed a deal with a major health care provider as well as with a network carrier, but as we go to press he's not at liberty to disclose the details" is also a not a statement regarding pending sales, and otherwise does not allege a misrepresentation as a matter of law, as the uncertainty about the "deal" is reflected in the statement itself. (Compl. p. 23 ¶ 3(J); *Id*. at Ex. F, Dkt. No. 1-2.) Moreover, all of the public statements alleged by Plaintiffs are insufficient as a matter of law for the separate reason that they are immaterial puffery or forward-looking statements that do not include allegations of "particular facts giving rise to a strong inference that the defendant had actual knowledge of the falsity of the statements"—indeed, Plaintiffs do not allege any facts suggesting that Defendants had actual knowledge that their statements were false. *Construction Workers*, 114 F. Supp. 3d at 646.

This leaves a set of allegedly false statements made by Defendants directly to Plaintiffs as shareholders. Again, Plaintiffs' allegation that those statements were "false" is not sufficient to meet the requirements of Rule 9(b) or the PLSRA. As with the alleged public statements, many of

the statements do not regard pending sales and so the more specific allegation that "none of the so-called pending sales were ever realized" does not save the statements. For example, statements that there is a "backblock [*sic*] of people wanting to invest in GeaCom," that GeaCom is "super busy tremendous progress," "very aggressive, big investment opportunity," that a potential customer is "pounding at the door," and that a particular investor is "considering acquir[ing] GeaCom for hundreds of millions" are not statements about pending sales. (Compl. p. 23–24 ¶¶ 4A, G, H, I, J, M, N.) Statements that a potential customer "indicated orders are coming" or "will finalize the order" are also not statements about pending sales. (*Id*. at ¶ 4E.) Because the Complaint alleges no other facts to plausibly suggest the falsity of any of the alleged misstatements, there is simply not enough there to support Plaintiffs' Exchange Act claim. Moreover, as with the alleged public statements, most if not all of the statements made directly to Plaintiffs fail for the additional reasons that they are either puffery or forward-looking statements, and that there are no allegations of particular facts giving rise to a strong inference that the Defendants had actual knowledge of the falsity of the statements. *Construction Workers*, 114 F. Supp.3d at 646.

The allegedly false statements that remain—again, viewing the Complaint in the light most favorable to Plaintiffs—consist of the following: a statement in March 2012 regarding "thousands of orders from Essentia, QHR, Health partners, University of Minnesota;" a 2013 statement that GeaCom "landed a deal with a health Care Provider;" a 2014 statement that "Health Department of Minnesota had dedicated money for purchase of Phazer;" a 2014 statement regarding "extremely large deal in Toronto, but we are GO;" a 2015 statement that "University of MN has 5 . . . Baylor scheduled first dozen by May; Garberville has 3 units . . . CentraCare has placed an order;" and a 2015 statement that "Adams and Barclays 100% in." (Compl. at p. 23–24,

¶¶ 4B, C, D, F, K, L.) However, these statements also cannot rescue Plaintiffs' Exchange Act claim because Plaintiffs have failed to plead that Defendants had the required scienter, let alone to plead that scienter with the requisite particularity. Simply put, the Complaint fails to "state with particularity facts giving rise to a strong inference" that defendant made the statements with "the intent to deceive, manipulate or defraud" or with "reckless disregard for the truth." *Jakubowski*, 150 F.3d at 681.

For these reasons, Plaintiffs' Exchange Act claim is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 7) is granted in part and denied in part. Specifically, Count I is dismissed with respect to the claims asserted by Plaintiffs Lu and Kotche, as well as the claims against Defendants Johnson and Romano. In addition, Counts IV, V, and VI are dismissed in their entirety. Defendants' motion to dismiss is denied as to Counts II and III; those claims survive as pleaded. Plaintiffs are granted leave to file an amended complaint that attempts to remedy the pleading deficiencies discussed herein by April 23, 2018.

ENTERED:

Dated: April 6, 2018

_____
Andrea R. Wood
United States District Judge